IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M.W., a minor by RYAN WAGNER and WHITNEY BROSCIOUS, his parents,<br><br>Plaintiffs,<br><br>v.<br><br>SHIKELLAMY SCHOOL DISTRICT,<br><br>Defendant. | No. 4:20-CV-00018<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**FEBRUARY 15, 2022**

In June 2018, Ryan Wagner and Whitney Broscious sued Shikellamy School District for violating Title IX of the Education Amendments of 1972 and the Fourteenth Amendment. Their case stems from sexual harassment that their son, M.W., experienced as kindergartener at Shikellamy School District's Beck Elementary School.[1] M.W.'s parents allege that by failing to act on their earlier complaint of sexual harassment, their son experienced a second—more severe—incident, and that to ensure his safety they were forced to remove him from the school.

The School District has now moved for summary judgment on both counts. As I'll explain in the pages that follow, that motion is granted, and denied, in part.

---

[1]  *See* Doc. 28 ¶¶ 1 & 17.

I.      **UNDISPUTED FACTS**

On May 5, 2017, M.W. was sexually accosted by another kindergartener at Beck Elementary School during gym class.[2] Video evidence shows the student pulling down M.W.'s pants and performing a sexual act on him while the class was unattended—the school's gym teacher had been retrieving equipment from a closet.[3] M.W.'s parents, Ryan Wagner and Whitney Broscious, did not learn about this incident, which occurred on a Friday, until the next week when M.W. told his grandmother that he had been called to the principal's office to watch the video.[4] And while the actual series of events that led to M.W.'s mother meeting with the school's principal, Ms. Giberson, on May 9 are unclear, it was only then that either of M.W.'s parents knew what had happened.[5]

Horrified, M.W.'s mother decided to pull her son out of the school—a decision that she claims that a Children and Youth Services caseworker agreed with.[6] But in her telling, this decision did not undo the harm: the incident left M.W. so anxious and distressed that she arranged for counseling and enrolled him at a new school the next autumn.[7]

---

[2]    *Id.* ¶¶ 1 & 7.
[3]    Doc. 33-1 at 72:15-15.
[4]    *Id.* at 51:9-14.
[5]    *Id.* at 53:22-24. Though M.W.'s mother, Ms. Broscious learned of the incident on this day, she did not watch the surveillance video until a later date, alongside a Children and Youth Services caseworker. Doc. 28 ¶¶ 14 & 15.
[6]    Doc. 33-1 at 61:7-13.
[7]    *Id.* at 21:15-21 & 41:17-23.

Of particular importance here, however, is what the school—and especially its principal, Ms. Giberson—knew about M.W. and his classmate's interactions in the months before. In M.W.'s parents telling, this was not the first time that his classmate had sexually harassed him. Just a few months earlier, the student had pulled M.W.'s pants down on the playground—an event that M.W.'s mother claims to have told Ms. Giberson about at parent-teacher conferences.[8] M.W.'s mother further claims that rather than addressing her complaint, it was "brushed off."[9] This failure, in her view, led to her son's later harassment.[10]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 prescribes the procedures for granting summary judgment. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] Therefore, to rule on a motion for summary judgment, a court must determine whether the parties have raised a *factual* dispute, whether that dispute is *material* to the conclusion of the case, and whether the dispute is *genuine*.[12] If the court finds no factual dispute, or concludes that it is immaterial

---

[8]  *Id.* at 34:2-9 & 38:4.
[9]  *Id.*
[10] *Id.*
[11] Fed. R. Civ. P. 56(a).
[12] *See id.*

or not genuine, it will then evaluate whether the moving party is entitled to judgment as a matter of law.[13]

Facts are material where they could alter the outcome, and disputes are genuine if evidence exists from which a rational person could conclude that the party bearing the burden of proving this fact is correct.[14] For movants and non-movants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (1) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (3) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[15]

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[16] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that

---

[13] *Id.*
[14] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (first citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[15] Fed. R. Civ. P. 56(c)(1).
[16] *Celotex*, 477 U.S. at 323 (internal quotations omitted).

the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[17]

If the movant does not bear the burden of proof at trial, they may succeed if they can point out "an absence of evidence that rationally supports the plaintiff's case."[18] In such cases, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[19] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[20]

Once the movant has sufficiently stated grounds for summary judgment, the burden then shifts to the nonmovant to set forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[21] "When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[22] "[I]f a party fails to properly

---

[17] *Id.*
[18] *Clark*, 9 F.3d at 326.
[19] *Liberty Lobby*, 477 U.S. at 252.
[20] *Id.*; *see also Celotex*, 477 U.S. at 323-24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").
[21] *Liberty Lobby*, 477 U.S. at 250.
[22] *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[23] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[24]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[25] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[26] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[27]

### III. ANALYSIS

#### A.  Count I: The Violation of Title IX

To start, M.W.'s parents' claim that the School District's handling of the events violated Title IX. Under this law, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving

---

[23] Fed. R. Civ. P. 56(e)(2).
[24] Fed. R. Civ. P. 56(c)(3).
[25] *Liberty Lobby*, 477 U.S. at 249.
[26] *Id*.
[27] *Id*. at 249–50 (internal citations omitted).

Federal financial assistance . . . ."[28] School districts can be sued for student-on-student harassment under Title IX if

> (1) [they] received federal funds; (2) sexual harassment occurred; (3) the harassment took place under circumstances wherein the [school district] exercised substantial control over both the harasser and the context in which the harassment occurred; (4) [the school district] had actual knowledge of the harassment; (5) [they were] deliberately indifferent to the harassment; and (6) the harassment was so severe, pervasive, and objectively offensive that it could be said to have deprived the victims of access to the educational opportunities or benefits provided by the school.[29]

The School District argues that M.W.'s parents cannot show that sex-based discrimination occurred, that the School District had actual knowledge of the inappropriate contact, that the School District was deliberately indifferent to the harassment, or that M.W. was deprived of educational opportunities as a result.[30]

But in making this argument, the School District does little more than describe the relevant standard and offer a conclusion. Their neglect of an ever-so essential element, the legal analysis, precludes me from finding in their favor—despite the shortcomings of their opponents' case.

---

[28] 20 U.S.C. § 1681(a).
[29] *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332 (W.D. Pa. 2008) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650–52 (1999)); *see also Smith v. Mid-Valley School Dist.*, 2019 WL 3202175, at *2 (M.D. Pa. July 16, 2019) (Caputo, J.) ("Title IX encompasses sexual harassment of a student by a teacher or another student and is enforceable through an implied private right of action for damages against a school district.").
[30] Doc. 29 at 8.

1.  **Did Sexual Harassment Occur? And Did It Exclude M.W. From Participation in Shikellamy Schools?**

I'll begin with the School District claim that the conduct here did not meet the second and sixth factors. That is first that M.W.'s classmates' conduct did not constitute "discrimination on the basis of sex"—and second that, in any event, the conduct was not "so severe, pervasive, and objectively offensive that it could be said to have deprived [him] of access to the educational opportunities."[31]

In *Davis v. Monroe County Board of Education*,[32] the Supreme Court weighed whether sexual harassment by one fifth grader against another constituted sex discrimination. The Court determined that it did—holding that "student-on-student sexual harassment, if sufficiently severe, can likewise rise to the level of discrimination actionable under [Title IX]."[33] So here, the threshold requirement—that M.W. was sexually harassed—is satisfied.

Still, elsewhere in its opinion, the *Davis* Court emphasized that Title IX requires more than sexual harassment alone. And that leads us to the other component of this analysis. To satisfy Title IX's requirements, the *Davis* Court wrote, the harassing behavior must also be "so severe, pervasive, and objectively

---

[31] *Davis*, 526 U.S. at 650; *see* Doc. 29 at 8.
[32] 526 U.S. 629 (1999).
[33] *Id.* at 650. In reaching this conclusion, the Court expanded on *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 63–64 (1992) and *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 281 (1998), where it had determined that teacher-on-student sexual harassment constituted "sex discrimination" under Title IX.

offensive that it denies its victims the equal access to education that Title IX is designed to protect."[34] Now, it is not necessary

> to show physical exclusion to demonstrate that students have been deprived by the actions of another student or students of an educational opportunity on the basis of sex. Rather, a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities.[35]

I have little doubt that the May 5, 2017 incident was severe and objectively offensive. Furthermore, given the emphasis on whether this harassment "detracts" or "deprives" the victim of their educational experience, two items in Whitney Broscious' deposition testimony are also relevant.[36] First, there is her statement that she had, with the agreement of a Children and Youth caseworker, decided to pull M.W. from school after this incident.[37] And second, there is her assertion that the incident left M.W., who was formerly happy and eager to attend school, anxious and distressed—so much so that he received counseling at Geisinger and enrolled at a new school.[38]

Still, while the evidence suggests that the harassing conduct was severe enough to have led M.W.'s parents to pull him from school and seek out counseling, in my view, there is a legitimate question about whether these two incidents render

---

[34] Davis, 526 U.S. at 652.
[35] *Davis*, 526 at 651 (citing *Meritor Sav. Banks, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).
[36] *See id.*
[37] Doc. 33-1 at 61:17-23.
[38] *Id.* at 21:15-21.

the sexual harassment "pervasive." But given that the School District has neither touched on this argument nor cited case law explaining what other courts have found "pervasive," it would be inappropriate to decide the case on this basis.

For the purposes of this motion, I find that evidence of the sexual act that M.W. endured on May 5, 2017—when coupled with evidence of M.W. having had his pants pulled down months earlier, his mother removing him from school, and the events' attendant psychological harms—satisfies these two elements.

### 2. Was an Appropriate Person with Actual Notice Deliberately Indifferent?

The next set of requirements—notice and deliberate indifference—are also interrelated, so I'll consider them together as well. The School District argues that M.W.'s parents "have failed to demonstrate the Defendant, Shikellamy School District, through an 'appropriate person' had actual notice or knowledge of the alleged inappropriate contact . . . [or that] a lack of response even if established . . . amounted to deliberate indifference to discrimination."[39]

To have had "actual knowledge" requires the School District to have known enough underlying facts to have been aware of the danger posed to the student.[40] And to have been "deliberately indifferent" to the discrimination requires that the

---

[39] Doc. 29 at 8.
[40] *Bostic*, 418 F.3d at 361.

School District's response reflect "an official decision by the recipient not to remedy the violation"—rather than mere ineffectiveness.[41]

But this set of requirements is really a trio. Not just any employee's knowledge and deliberate indifference can be attributed to the School District; M.W.'s parents must identify an "appropriate person" with "authority to institute corrective measures."[42]

"Whether a particular school official has authority to institute corrective measures will depend on the facts and circumstances of each case."[43] Though not a categorical rule, school principals ordinarily meet this standard; but courts must look beyond title.[44] In making this assessment, courts in this District have considered factors such as whether "a school official who has the authority to halt known abuse,

---

[41] *Gebser*, 524 U.S. at 290–91.
[42] *Id.* at 290.
[43] *Doe v. Allentown Sch. Dist.*, 2012 WL 13201474, at *2 (E.D. Pa. Mar. 21, 2012) (citing *Bostic* 418 F.3d at 362).
[44] That this requirement is *typically* satisfied when an administrator, such as a principal, has knowledge emerged from *Warren ex rel. Good v. Reading Sch. Dist.,* 278 F.3d 163, 171 (3d Cir. 2002) ("[A] school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX."). Still, in a later decision, the Third Circuit emphasized that this is not a categorical rule. *Bostic*, 418 F.3d at 362 (finding that it was an error to read *Warren* to require a finding that a school principal and assistant principal were "appropriate officials as a matter of law"). Though M.W.'s parents have not argued that his classroom teacher had "apparent authority" it's also worth noting that this argument has not been accepted by other federal courts in this state—regardless of whether the case revolved around teacher-on-student sexual harassment or student-on-student sexual harassment. *See Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 751 (W.D. Pa. 2018), For example, in *Lansberry v. Altoon Area School District*, a student-on-student harassment case involving high schoolers, the court cited with approval a case in the same district that found that a band teacher was not an appropriate person to act with authority on the district's behalf to remedy teacher-on-student sexual harassment. *Id.* (citing *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 346 (W.D. Pa. 2011)).

perhaps by measures such as transferring the harassing student to a different class, suspending him, curtailing his privileges, or providing additional supervision."[45]

Taken together, the question then is whether M.W.'s parents have (1) shown that a person with "authority to address the alleged discrimination and to institute corrective measures on the . . . [district's] behalf" had (2) "actual knowledge of discrimination in the [district's] programs," but (3) responded in a way that "amount[ed] to deliberate indifference?"[46]

In my view, M.W.'s parents scrape by. Their briefing does no better than their opponent on the "appropriate person" prong: it acknowledges the requirement and that a principal is an example of such a person, but it does not detail why Ms. Giberson fits the bill.[47] Still, reading Ms. Broscious' testimony in the most favorable light, a reasonable jury could conclude that Ms. Giberson could take corrective action based on her response to the incident. Indeed, after she learned of the student's conduct, her actions suggest she had the authority to redress it. For instance, she brought the children and parents into the office, seemingly to mete out discipline, and she also decided to involve Children and Youth Services caseworkers.[48]

---

[45] *Murrell v. School Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1247 (10th Cir. 1999); *see, e.g., Swanger v. Warrior Run Sch. Dist.,* 346 F. Supp. 3d 689 (M.D. Pa. 2018) (Mariani, J.) (looking to the *Murrell* factors).
[46] *Id.*; *M.W. by Wagner v. Shikellamy Sch. Dist.,* 2020 WL 3250974, at *3 (M.D. Pa. June 16, 2020) (quoting *Bostic v. Smyrna Sch. Dist.,* 418 F.3d 355, 360–61 (3d Cir. 2005)).
[47] *See* Doc. 33 at 9–10.
[48] *See* Doc. 33-1 at 58:10-15, 60:21-25; Doc. 28 ¶ 14.

Ms. Broscious' testimony likewise provides the basis for Ms. Giberson's alleged knowledge and deliberate indifference—though, here too, I'll note that the case is awful thin. In her deposition, Ms. Broscious claimed that before the May 5th incident, she had told Ms. Giberson "that some kid pulled [M.W.'s] pants down on the—on the playground. And then [she] just got the typical we'll look into it, and, you know, pay more attention."[49] But in Ms. Broscious' view, Ms. Giberson "just brushed it off as playing around" and never got back to her about her concern.[50]

In response, the School District claims that Ms. Broscious "admitted that she has no factual evidence to support the allegations that anyone from [the] school district had any actual knowledge of any inappropriate behavior."[51] This assertion appears to seize on the fact that Ms. Broscious does not have additional evidence to corroborate her account.[52] But a lack of corroborating evidence does not doom her

---

[49] Doc. 33-1 at 34:3-7.
[50] *Id.* at 34:9-14.
[51] Doc. 28 ¶ 20; Doc. 34.
[52] In particular, the School District highlights the following question and response—though their supplemental filing cuts off the initial portion of the question:

> Q. Do you have any actual knowledge at all that either the staff or the administration at the Beck Military—Elementary School District, including Ms. Glaudeck [sic] and Mrs. [sic] Giberson, had actual knowledge of—of a pattern—an ongoing pattern of harassment, or T. harassing your son, prior to the incident of May 5, 2017?
> A. They just knew my concerns.
> Q. Okay.
> A. From the parent teacher conference and—
> Q. But nothing other than—
> A. No.
> Q. —what you had told them?
> A. No
> Q. At the parent conference?

case. Simply put, a jury could credit her testimony claiming that she informed Ms. Giberson. So however tenuous and susceptible to impeachment it may be, her testimony raises a genuine dispute of material fact about whether, in failing to act on this warning (of an albeit lesser act), the School District had actual knowledge of the discrimination and was deliberately indifferent to it.

\*   \*   \*

In sum, the School District's motion for summary judgment on M.W.'s parents' Title IX claim is denied.

### B. Count II: The 42 U.S.C. § 1983 Violation

The School District has also moved for summary judgment on M.W.'s parents' second count, that the School District's conduct violated the Fourteenth Amendment and therefore entitles them to recovery under 42 U.S.C. § 1983. In their brief in opposition, M.W.'s parents do not address this claim. Because they have made no argument against the granting of the summary judgment on this count, I find that they have abandoned their claim.[53]

The School District's motion, as to this claim, is accordingly granted.

---

A. Right.
Doc. 33-1 at 101:24-25 & 102:1-14.

In the Court's view, this statement confirms her statement earlier in the deposition that she told the Principal about what had occurred. *See id.* at 34:2-14.

[53] *See* Doc. 33.

## IV. CONCLUSION

Shikellamy School District's motion for summary judgment under Rule 56 is granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge